IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------x
:
MEDACIST SOLUTIONS GROUP, LLC       :     NO. 3:07 CV 692(JBA)
:
v.                                  :
:     DATE: FEBRUARY 22, 2011
PANDORA DATA SYSTEMS, INC.          :
---------------------------------------------------------x

RECOMMENDED RULING ON PLAINTIFF'S MOTION TO OPEN JUDGMENT, TO ENFORCE
SETTLEMENT AGREEMENT, AND FOR TEMPORARY AND PERMANENT RESTRAINTS

On May 2, 2007, plaintiff Medacist Solutions Group LLC ["Medacist"] commenced this patent infringement litigation against defendant Pandora Data Systems, Inc. ["Pandora"]. (Dkt. #1).  On October 18, 2007, Pandora filed its answer and counterclaim against Medacist seeking a declaration of non-infringement and a declaration of invalidity.  (Dkt. #9). Medacist filed its answer to Pandora's counterclaim on October 31, 2007.  (Dkt. #11). Thereafter, on October 28, 2008, the parties filed a Stipulation of Dismissal of this case, which was so ordered by United States District Judge Janet C. Hall the next day.  (Dkts. ##29-30).

Two years later, on November 12, 2010, Medacist filed the pending Motion to Open Judgment, to Enforce Settlement Agreement, and for Temporary and Permanent Restraints, along with an affidavit and brief in support.  (Dkts. ##33-35, 37-38).[1]  Four days later, this

---

[1] Medacist also filed a Motion to File a Copy of the Settlement Agreement and License Under Seal (Dkt. #37), which motion is <u>granted</u>.  Attached to this Motion is a copy of the Settlement Agreement and License, dated October 20, 2008 ["Agreement"].  The Agreement has been filed, under seal.  (Dkt. #38).  In light of Medacist's legitimate proprietary concerns, this Recommended Ruling will not reveal the specific terms of the Agreement, but only the more "boilerplate" items at issue.

Filed with Medacist's motion is a Declaration of David J. Brzozowski, Medacist's President and CEO, sworn to November 12, 2010 ["Brzozowski Aff't"]. (Dkt. #34).

Attached to Medacist's brief in support (Dkt. #35) are the following exhibits: copy of Stipulation of Dismissal, dated October 28, 2008 ["Stipulation of Dismissal"](Exh. A); copy of

case was transferred to United States District Judge Janet Bond Arterton (Dkt. #36), and the pending motion was referred to this Magistrate Judge seven days thereafter, and again on December 9, 2010. (Dkts. ##39, 52). On December 3, 2010, Pandora filed its brief in opposition, along with a Motion to Seal this brief. (Dkts. ##47-48).[2] Medacist filed a reply brief on December 17, 2010 (Dkt. #56),[3] and on February 11, 2011, it filed a supplemental brief in further support of its motion (Dkt. #59)[4]; Pandora filed its supplemental brief five days later. (Dkt. #60).[5]

---

complaint filed in Medacist Solutions Group, LLC v. Omnicell, Inc., Civ. No. 3:09-CV-6128 (PGG), filed on July 8, 2009 in the Southern District of New York [the "Omnicell Action"], attached to which is a copy of the Non-Disclosure Agreement entered between Omnicell and Medacist on October 13, 2004, and a copy of the '736 Patent; (Exh. B); copy of article, dated October 5, 2010, posted on Pandora's website (Exh. C); copies of correspondence between counsel, dated October 12, 2010 (Exhs. D-E); and copy of complaint filed in Omnicell, Inc. v. Medacist Solutions Group, LLC, CV 10-4748(HRL), on October 20, 2010 in the Northern District of California ["California Action"] (Exh. F).

[2]Pandora's Motion to Seal (Dkt. #47) is granted.

Attached to Pandora's sealed brief in opposition (Dkt. #48) are the following exhibits: Declaration of John D. Cadkin, counsel for Pandora, sworn to December 3, 2010 (Exh. 1); another copy of the Agreement (Exh. A); copy of correspondence from Medacist to Pandora, dated January 15, 2010 ["1/15/10 Letter"](Exh. B); copy of correspondence from defense counsel to Medacist, dated January 28, 2010 ["1/28/10 Letter"](Exh. C); copies of e-mail correspondence, dated February 16 & 23 and March 2, 2010 (Exh D.); copy of correspondence from defense counsel to Medacist, dated March 5, 2010 ["3/5/10 Letter"](Exh. E); copies of Pandora's sales records (Exh. F-J); copy of Medacist's Notice of Motion and Motion to Dismiss for Change of Venue, filed in the California Action (Exh. K); Declaration of James C. Felich, Pandora's Chief Executive Officer, sworn to December 2, 2010 ["Felich Aff't"] (Exh. 2); Declaration of Lora M. Nunes, President of Pandora until September 29, 2010, and current Head of Business Analytics, sworn to December 2, 2010 ["Nunes Aff't"] (Exh. 3); and Declaration of Nhat H. Ngo, Omnicell's Vice President of Strategy and Business Development, sworn to December 2, 2010 ["Ngo Aff't"] (Exh. 4).

[3]Attached to Medacist's reply brief are the following exhibits: copy of e-mail correspondence, dated October 15, 2010 (Exh. 1); copy of www.Omnicell.com/PandoraPromotion (Exh. 2); and copy of article posted on Pandora's website, dated December 1, 2010 (Exh. 3).

[4]Attached to Medacist's supplemental brief is a copy of the Order Granting Motion to Dismiss, filed on February 10, 2011 in the California Action. (Exh. A).

[5]Attached as Exh. A is a copy of Omnicell and Pandora's Notice of Appeal, filed February 14, 2011, in the California Action.

For the reasons stated below, Medacist's Motion to Enforce Judgment and for Temporary and Permanent Restraints (Dkt. #33) is <u>granted in part and denied in part</u>.

## I. FACTUAL BACKGROUND

As stated above, on May 2, 2007, Medacist filed its complaint against Pandora in which it alleged that certain of Pandora's products infringed one or more claims of U.S. Patent No. 6,842,736 ["'736 Patent"],[6] and Pandora, in turn, sought a ruling that the '736 patent was invalid. (Dkts. ##1, 9; <u>see</u> Dkt. #35, at 7; Dkt. #48, at 3). On October 20, 2008, the parties entered into a Settlement Agreement and License ["Agreement"] which granted Pandora and its successors in interest a limited license for the use of the '736 patent, and Pandora agreed to pay certain royalty payments to Medacist related to that license. (Agreement, at 1-3, 8).[7] In the Agreement, defendant "Pandora" or the "Licensee" is defined as Pandora, "its predecessors, successors in interest, subsidiaries, Affiliates, partners and any person or entity acting on behalf of or under the direction, supervision, or control of Pandora . . . ." (<u>Id.</u> at 2).[8] An "Affiliate" is defined as "any company . . . that directly or indirectly controls . . . a Party. Control shall mean the possession of more than fifty percent (50%) of the voting stock . . . or the power to . . . cause the direction of the management and policies of the controlled entity." (<u>Id.</u> at 1). Additionally, the Agreement, provided for periodic audits of Pandora's financial records to ensure that it was complying with its royalty obligations.

---

[6]The '736 Patent "provided automated auditing, dispensing and reporting systems and related software products for healthcare and pharmaceutical applications, including drug dispensing systems." (Brzozowski Aff't, ¶ 2). Medacist's brief contains a comprehensive description of the products at issue here, their roles within the medical market, and the two licensing models utilized in this market. (Dkt. #35, at 2-7).

[7]<u>See</u> note 1 <u>supra</u>.

[8]Additionally, Section 9.5 of the Agreement provides: "This Agreement shall be binding upon the successors and assigns of the parties." (<u>Id.</u> at 8).

3

(Id. at 4; see also Brzozowski's Aff't, ¶ 5).  The Agreement further provided that it was to be governed and construed in accordance with Connecticut law, and "the Court will retain jurisdiction to enforce the Agreement."  (Agreement, at 5, 8; see also Dkt. #29, ¶ 3).[9]

In accordance with the terms of the Agreement, during fall 2009, Medacist conducted an audit of Pandora's books and records that revealed that "in the year since the Agreement . . . entered, Pandora had significantly underpaid Medacist for the royalties it was owed." (Brzozowski Aff't, ¶ 6; see Dkt. #35, at 8; Dkt. #48, at 5, Felich Aff't, ¶ 6, Nunes Aff't, ¶ 6).[10] Following the audit, on January 15, 2010, Medacist advised Pandora of its belief that Pandora had underpaid royalties due in the amount of $34,003, in response to which Pandora sent Medacist a check for $34,003, of which two entries were not disputed, but Pandora also reserved its right to apply its payment as a credit against future royalties.  (1/15/10 Letter; 1/28/10 Letter; Brzozowski Aff't, ¶ 7; Dkt. #35, at 9; Dkt. #48, at 5-6; Felich Aff't, ¶ 7; Nunes Aff't, ¶ 7).  On March 5, 2010, Pandora sent Medacist a letter in which it outlined four undisputed entries and elaborated on four "[a]reas of [d]isagreement. . . ."  (3/5/10 Letter; see Nunes Aff't, ¶ 11).

On September 29, 2010, Omnicell, Inc. ["Omnicell"] a non-party to this litigation, acquired Pandora.  (Felich Aff't, ¶ 9, Nunes Aff't, ¶ 13; Dkt. #35, at 9, Dkt. #48, at 7, 9).

---

[9]Pandora contends that while the Agreement is governed and interpreted according to the laws of the State of Connecticut, the Agreement "does not contain a venue or forum selection clause requiring actions to enforce or interpret the [Agreement] be brought in this Court."  (Dkt. #48, at 4)(citation omitted & emphasis in original).  According to Pandora, "the boilerplate language of the [Agreement] and associated Stipulation of Dismissal [(see Dkt. #29)] allow a federal court to retain subject matter jurisdiction where there otherwise would be none."  (Dkt. #48, at 4-5)(citation omitted).

[10]Because Pandora's brief in opposition (Dkt. #48) has filed under seal, see note 2 supra, this discussion will only identify factual matters that appear in Medacist's filings (Dkts. ##33-35), which are not under seal, or facts in Pandora's sealed brief that do not reveal anything confidential.

Omnicell is a competitor of Medacist and the defendant in a lawsuit brought by Medacist on July 8, 2009 in the Southern District of New York, captioned <u>Medacist Solutions Group, LLC v. Omnicell, Inc.</u>, Civ. No. 3:09-CV-6128 (PGG) [the "Omnicell Action"].[11]  Following the acquisition, Omnicell provided Medacist with a royalty report and payments pursuant to the Agreement on behalf of Pandora, and like Pandora, Omnicell has "offset" the amount due against the prior payment by Pandora.  (Brzozowski Aff't, ¶ 8; Dkt. #35, at 10; Dkt. #48, at 7; Nunes Aff't, ¶ 15).   On October 12, 2010, Medacist's attorneys informed counsel for both Omnicell and Pandora that the acquisition of Pandora by Omnicell, and Omnicell's "publicly stated purpose" for the acquisition, namely that the parties will "leverage the Omnicell development expertise," and their "combined technology will be able to increase hospital patient safety[,]" "raise a host of issues regarding the ongoing relationship between Medacist and Pandora – including, . . . the scope of Pandora's obvious violation of Section 6.4" of the Agreement.  (Dkt. #35, Exhs. C-D; <u>see</u> Dkt. #35, Exh. E; Dkt. #35, at 10-12; Dkt. #48, at 7, 9-10).  Medacist proposed a date for the parties to meet and stated that if it does not receive a response, it will "pursue the rights and remedies available to it at law and under the [Agreement]." (<u>See</u> Dkt. #35, Exh. D; Dkt. #35, at 11-12; Dkt. #48, at 9-10).

Eight days later, Omnicell and Pandora jointly filed suit in the U.S. District Court for

---

[11]In the Omnicell Action, Medacist has alleged that Omnicell has infringed and continues to infringe Medacist's '736 Patent, breached a non-disclosure agreement it had entered into with Medacist, misappropriated Medacist's trade secrets, and engaged in fraudulent and negligent misrepresentations in its course of dealing with Medacist.  (<u>See</u> Dkt. #35, at 9 & Exh. B).  Omnicell responded by filing a counterclaim against Medacist seeking a declaratory ruling of non-infringement and for validation of the '736 Patent.  (Dkt. #35, at 9-10).

Fact discovery is underway in the Omnicell Action and according to Pandora, Omnicell has produced to Medacist more than 160,000 pages of documents, including documents related to revenue associated with the Omnicell Software.  (Dkt. #48, at 8-9; Cadkin Aff't, ¶ 13 & Exhs. I-J).  According to Pandora, these documents evidence that Omnicell may, in fact, track revenue relating to the sales of its software in a manner consistent with the Agreement, contrary to Medacist's suggestion.  (Dkt. #48, at 9; Ngo Aff't, ¶ 5).

the Northern District of California, captioned <u>Omnicell Inc. and Pandora Sys., Inc. v. Medacist Solutions Group LLC</u>, No. 10-CV-04746-HRL ["California Action"].  (Dkt. #35, at 12 & Exh. F; Dkt. #35, at 12; Dkt. #48, at 10).  The California Action sought, among other things, a declaration that Pandora has not breached the Agreement and that Omnicell, as Pandora's parent company, is entitled to certain rights and benefits under the Agreement as an "Affiliate" of Pandora.  (<u>Id.</u>).  Twenty-three days after the California Action was filed, Medacist filed the pending motion in this case, and on February 10, 2011, the California Action was dismissed on grounds that this dispute "falls entirely within the District of Connecticut's exclusive retention of jurisdiction."  (Dkt. #59, Exh. A).  Four days later, Omnicell and Pandora filed their Notice of Appeal of that decision in the California Action.  (Dkt. #60, Exh. A).

## II. DISCUSSION

Medacist moves to reopen the judgment for the limited purpose of interpreting and enforcing the parties' Agreement.  (Dkt. #33).  According to Medacist, despite the parties' original intent as expressed in the Agreement, Omnicell and Pandora have taken the position that they "<u>each</u> ha[ve] the right to enjoy all the rights and benefits of the Pandora License," (California Action Complaint, ¶ 10)(emphasis added), which leaves Medacist at "imminent risk that its patented technology will be unlawfully incorporated into and subsumed within Omnicell's technology via Omnicell's leveraging of . . . the consultancy model, such that it will be virtually impossible for Medacist to preserve its rights as the holder of the '736 Patent, enforce its license with Pandora, or identify and recover the royalties to which Pandora agreed and Medacist is entitled."  (Dkt. #35, at 12-13; Brzozowski Aff't, ¶ 10). Accordingly, Medacist seeks an entry of a temporary restraining order and preliminary and permanent

injunctions against Pandora prohibiting it from exceeding the scope of its license under the Agreement; a finding that Pandora has breached the Agreement; an order for specific performance of the Agreement in accordance with its terms and the intent of the parties; and an award of money damages plus attorneys' fees and costs. (Dkt. #33). As of the present, Medacist seeks arrears of $35,003 with additional interest, and an "estimate[d]" additional $15,000 in unpaid royalties subsequent to the audit. (Dkt. #35, at 9; Brzozowski Aff't, ¶ 9).[12] Pandora contends that the "proper procedural vehicle for [Medacist] to assert these new allegations is not to reopen this litigation pursuant to FED. R. CIV. P. 60(b)(6), but, rather, file a new complaint for breach of contract and seek remedies related thereto." (Dkt. #48, at 2). However, according to Pandora, any new action Medacist would bring would be subject to the first-to-file rule and the case would "revert back to the U.S. District Court for the Northern District of California, where a litigation addressing the very same issues is already underway." (Dkt. #48, at 2).[13] Additionally, Pandora contends that Medacist is seeking to enjoin a non-party from lawfully conducting business, and this Court lacks jurisdiction to grant such "sweeping relief." (Id.).

---

[12] The parties' filings establish that there is a dispute as to an alleged breach of the Agreement, and for the reasons addressed in Section II.A. infra, jurisdiction over an alleged breach and the enforcement of the Agreement lies in this Court. Medacist's filings, however, do not address its requests for a finding that Pandora has breached the Agreement, an order for specific performance of the Agreement in accordance with its terms and the intent of the parties, and an award of money damages plus attorneys' fees and costs (see also Dkt. #48, at 20-23 & Exhs. B-J; Nunes Aff,t, ¶¶ 8-12, 15-16), but rather focus solely on this Court's jurisdiction to enforce the Agreement and on the "intent" of Pandora and Omnicell's joint enterprise.

Accordingly, counsel shall promptly contact this Magistrate Judge's Chambers to schedule a telephonic status conference upon the reopening of this litigation to address the best manner in which to resolve the outstanding issues.

[13] This argument presently is moot in light of the recent dismissal of the California Action on February 10, 2011 (See Dkt. #59 & Exh. A), despite Pandora and Omnicell's recent appeal (see Dkt. 60 & Exh. A), for the simple reason that no action is currently pending there right now. See Section II.B. infra.

A. JURISDICTION

Section 6.1. of the Agreement reads:

> Concurrently with the execution of this Agreement, Medacist and Pandora shall execute and file a Stipulated Request for Dismissal of the Action with prejudice pursuant to F.R.C.P. Rule 41(a). This Dismissal shall provide that each party shall bear its own costs and that the Court will retain jurisdiction to enforce the Agreement.

(Agreement, at 5).

The Stipulation of Dismissal provides:

> The Court shall retain jurisdiction, pursuant to Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 144 S. Ct. 1673 (1994) and the inherent authority of the Court to enforce its orders, over Medacist and Pandora and the subject matter of this action and the Settlement Agreement for purposes of construing and enforcing the Settlement Agreement, including remedies for violation of said matters, and each party expressly reserves its rights to pursue the other party for violation of said matters.

(Dkt. #29, at ¶ 3).

In Kokkonen, the parties reached an oral agreement that was placed on the record before the District Judge, and was followed by an executed Stipulation and Order of Dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii). 511 U.S. at 376. The Stipulation and Order did not refer to the settlement agreement, let alone reserve the jurisdiction in the District Court to enforce the settlement agreement. Id. at 377. A month after the Stipulation was "so ordered" by the District Judge, Guardian Life moved to enforce the agreement,[14] which Kokkonen opposed on grounds that the court lacked subject matter jurisdiction; the District Court entered an enforcement order asserting its "'inherent power" to do so and the Ninth Circuit affirmed. Id. The U.S. Supreme Court held in that case that

---

[14] The U.S. Supreme Court "emphasized" that what was sought was "enforcement of the settlement agreement, and not merely reopening of the dismissed suit by reason of breach of the agreement that was the basis for dismissal." Id. at 378.

8

because the only order entered was that the suit be dismissed, which dismissal was not "imperiled by the alleged breach of the settlement agreement[,]" ancillary jurisdiction did not exist. Id. at 380-81.  However, the Supreme Court made clear that "[t]he situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal -- either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement)[, as is the situation in the present case,] or by incorporating the terms of the settlement agreement in the order." Id. at 381. The Supreme Court concluded that in the event of either situation, "a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist."  Id.

Federal Rule of Civil Procedure 60(b)(6)  provides: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding [for] . . . any other reason that justifies relief."   Rule 60(b)(6) allows judicial relief "only when exceptional or  extraordinary circumstances exist." House v. Sec'y of Health and Human Servs., 688 F.2d 7, 9 (2d Cir. 1982)(internal quotations & citations omitted). Pandora contends that Medacist's "breach of contract" argument does not constitute "'extraordinary circumstances' justifying relief under Rule 60(b)(6), especially when a party is able to bring a new cause of action for breach of contract."  (Dkt. #48, at 14, citing Omega, S.A. v.  Omega Eng'g, Inc., No. 3:01  CV 2014(SRU), 2008 WL 160589 (D. Conn. Jan. 15, 2008) & Diaz v. Loews New York Hotel, No. 97 Civ. 2731(SAS), 1998 WL 326736 (S.D.N.Y. Jun. 18, 1998)).  However, Pandora's reliance on these cases is misplaced.

In Omega, S.A., 2008 WL 160589, at *1-2, Omega, S.A. failed in its effort to move under FED. R. CIV. P. 60(b)(5) to alter a 2005 summary judgment decision, see Omega, S.A.

9

v. Omega Eng'g, Inc., 396 F. Supp. 2d 166 (D. Conn. 2005), based on a settlement agreement reached in 1994 in a separate case involving these parties, and based on Omega, S.A.'s claim that the summary judgment ruling was superseded by a 2003 settlement agreement reached in yet another case, two years prior to the entry of the 2005 summary judgment decision, which agreement was enforced by U.S. Magistrate Judge Thomas P. Smith, whose recommended ruling was approved and adopted by Senior United States District Judge Alfred V. Covello, see Omega Eng'g, Inc. v. Omega, S.A., 2004 WL 2191588 (D. Conn. Aug. 12, 2004), and was affirmed by the Second Circuit, 432 F.3d 437 (2d Cir. 2005). This case bears no resemblance to the complex procedural and litigation history of Omega ,S.A., as in this case, Medacist is seeking to enforce the Agreement that resolved this litigation, and which led to the entry of a Stipulation of Dismissal.

Further, unlike in Diaz, where the parties filed a Stipulation of Discontinuance in which the "language neither retains jurisdiction to enforce the Agreement nor does it incorporate the terms of the Agreement into the Stipulation," 1998 WL 326736, at *1, in this case, the parties expressly retained this Court's jurisdiction in both the Agreement and the Stipulation of Dismissal.

As stated above, the parties complied with precisely what the Supreme Court outlined in Kokkonen as the way in which parties may preserve ancillary jurisdiction over their agreement: "If the parties wish to provide for the court's enforcement of a dismissal-producing settlement agreement, they can seek to do so." 511 U.S. at 381.  The parties here did just that by carefully wording the language in their Stipulation of Dismissal to explicitly state that the "Court shall retain jurisdiction, pursuant to [Kokkonen] and the inherent authority of the Court to enforce its orders, . . . for purposes of construing and enforcing the

10

Settlement Agreement . . . ." (Dkt. #29, at ¶ 3).  Further, there is no factual dispute as to whether a binding settlement agreement exists or that, as articulated above, this Court would retain jurisdiction over the enforcement of the Agreement.  Thus, under the circumstances of this case, Medacist is entitled to relief from judgment for the limited purpose of having this Court interpret and enforce the terms of the parties' Agreement.[15]

### B. APPLICABILITY OF THE FIRST-TO-FILE RULE

Pandora contends that Medacist's pending Motion is a failed attempt to avoid the application of the first-to-file rule followed in the Second Circuit, and because no special circumstances or balance of convenience favor proceeding in this forum, any new complaint filed by Medacist concerning the conduct at issue in this Motion would be dismissed.  (Dkt. #48, at 11, 15-20).  Pandora's argument, however, overlooks this Court's jurisdiction over this dispute,[16] and as stated above, this argument is rendered moot by the recent dismissal

---

[15]Additionally, as Medacist appropriately notes, there are strong public policy concerns favoring the enforcement of settlement agreements.  (Dkt. #56, at 3).  As articulated by the Sixth Circuit years prior to Kokkonen:

> To take the defendant's . . . position that the present motion to reinstate the case for alleged failure to comply with the terms of the settlement agreement is a mere contract dispute is to close one's eyes to the reason the agreement was formed. The agreement in question came into existence not in the free market place but in response to pending litigation in a federal court. It is not understating the issue to say that without the lawsuit, the agreement might never have come to pass. Therefore, the contract entered into between the parties cannot be viewed independently of the original suit; its formation was an outgrowth of this case.

Arco v. Allied Witan Co., 531 F.2d 1368, 1371 (6th Cir.), cert. denied, 429 U.S. 862 (1976).

[16]As stated above, the parties presented to Judge Hall an Agreement and Stipulation of Dismissal that expressly provided: "The Court shall retain jurisdiction, pursuant to [Kokkonen] and the inherent authority of the Court to enforce its orders . . . ."  (Agreement, at 5; Dkt. #29, at ¶ 3)(emphasis added).  For Pandora to argue now that while "the parties . . . agree that a federal court retains jurisdiction to enforce the Agreement," but California is the proper venue for this dispute because the Agreement does not contain a venue or forum selection clause, ignores the premise that this Court, as it is referenced in the Agreement and Stipulation of Dismissal, obtained jurisdiction on these issues first, when this action was commenced on May 2, 2007, and, for the reasons stated in Section I.A. supra, retains such jurisdiction over the current dispute.  To accept

of the California Action on February 10, 2011, on grounds that "the District of Connecticut's retention of jurisdiction was intended to be exclusive" and the "construction of the settlement agreement . . . . falls entirely within the District of Connecticut's exclusive retention of jurisdiction." (Dkt. #59, Exh. A, at 11; see id. at 4-12).[17]

### C. TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF

Medacist seeks a "stand still" temporary restraining order and preliminary injunction while its underlying motion to open and enforce the Agreement is pending in order to maintain the status quo that existed before the acquisition of Pandora by Omnicell, and to avoid the irrevocable loss of Medacist's rights and interests in its patented technology. (Dkt. #35, Brief at 16-21; see also Dkt. #56, at 9-10).[18] In response, Pandora contends that Pandora has fulfilled its royalty obligations under the Agreement; Pandora's participation in the California Litigation is not a breach of the Agreement; the integration of Pandora's and Omnicell's technology will not breach the Agreement; and Medacist cannot satisfy the standard for obtaining injunctive relief. (Dkt. #48, at 20-27).

"Irreparable harm is the single most important prerequisite for the issuance of a

---

Pandora's argument would be to subvert the intent articulated by the parties and the strong public policy of favoring settlements and the enforcement thereof.

[17] See note 13 supra.

[18] As an initial matter, the Second Circuit has noted that "[t]he power of a [Magistrate judge] to extend a TRO," and thus, by extension, to issue a TRO, is "doubtful." Dole Fresh Fruit Co. v. United Banana Co., 821 F.2d 106, 108, n.1 (2d Cir. 1987); SS & C Techs., Inc. v. Providence Inves. Mgmt., 582 F. Supp. 2d 255, 256 (D. Conn. 2008)("The [M]agistrate [J]udge declines to enter an injunction for a variety of reasons, the most important being that he lacks the authority to do so."); see Aetna Life Ins. Co. v. Tooth Savers Dental Svs., No. 3:96 CV 570(GLG), 1997 WL 102453, at *1 (D. Conn. Feb. 4, 1997). 28 U.S.C. § 636(b)(1)(A) permits a Magistrate Judge to "hear and determine any pretrial matter pending before the court, except for a motion for injunctive relief," or other specified motions. Subparagraph (B) permits a District Judge to refer any motion "excepted in subparagraph (A)," for the Magistrate Judge to conduct hearings and submit proposed findings of fact and recommendations for disposition.

preliminary injunction. . . . Accordingly, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered."  Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112,114 (2d Cir. 2005), quoting Rodriguez v. DeBuono, 175 F.3d 227, 233-34 (2d Cir. 1999)(internal quotations omitted). Further, irreparable injury analysis requires the party seeking injunctive relief to show that there exists no adequate remedy at law.  Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979)(citation omitted)(irreparable injury means injury for which a monetary award cannot be adequate compensation); see Wisdom Import Sales Co., LLC v. Labatt Brewing Co., Ltd., 339 F.3d 101, 113-14 (2d Cir. 2003)(irreparable harm is "harm shown to be noncompensable in terms of money damages.").  "[W]here monetary damages may provide adequate compensation, a preliminary injunction should not issue." Jayaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995)(citation omitted).  Moreover, the threat of irreparable harm must be "neither remote nor speculative, but actual and imminent."  Rodriguez, 175 F.3d at 234 (citations omitted).

Medacist contends that Pandora has already "materially breached its Agreement with Medacist by virtue of its non-payment of royalties and the improper institution of the [California Action]." (Dkt. #35, at 20). To the extent that Medacist prevails on these claims of breach, Medacist's damages are quantifiable, money damages will provide an adequate remedy,[19] and there is no evidence that Pandora will be unable to satisfy such a remedy. Medacist contends further that it will suffer irreparable harm if injunctive relief does not enter to protect its "rights under the agreement." (Id.).  In support of its claim of this future irreparable injury, Medacist contends that Pandora "has expressed a further intent to violate

---

[19] In fact, Medacist acknowledges that these two breaches "can be adequately redressed through an award of monetary damages." (Dkt. #35, at 20).

13

the scope of the license[,]" (id.)(emphasis added); Pandora, "in concert with Omnicell, intends to exceed the scope of the license . . ., combine technologies with Omnicell, and subsume [Medacist's] patented technology within their combined products," (id. at 18)(emphasis added); and "[b]ased upon the aggressive marketing of Pandora[']s] products by Omnicell . . ., it is apparent that the intent of their joint enterprise is to drive Medacist from the market by leveraging Omnicell's misappropriated technology with Pandora's limited license to subvert Medacist's royalty rights under the Agreement." (Dkt. #56, at 10)(emphasis added). Medacist's reliance on marketing materials and its principal's affidavit do not establish more than this speculative intent to engage in acts that will result in irreparable harm. (See e.g., Brzozowski Aff't, ¶ 10; Dkt. #56, Exh. 2). "In the absence of a showing of irreparable harm, a motion for preliminary injunction should be denied." Rodriguez, 175 F.3d at 234 (citations omitted). Accordingly, Medacist's request for the entry of a preliminary injunction is denied without prejudice to renewal at a future time.

## II. CONCLUSION

For the reasons stated below, Medacist's Motion (Dkt. #33) is granted to the extent it seeks to Open Judgment, and is denied without prejudice at a future time to the extent it seeks Temporary and Permanent Restraints.[20]

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within ten days after service of same);** Fed. R. Civ. P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary, H&HS, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file**

---

[20] As previously indicated, the motion presently remains unresolved to the extent it seeks enforcement of the Settlement Agreement, for which counsel need promptly to contact this Magistrate Judge's Chambers. See note 12 supra.

**timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

Dated at New Haven, Connecticut, this 22nd day of February, 2011.

/s/ Joan G. Margolis, USMJ
Joan Glazer Margolis
United States Magistrate Judge
